**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**LOIS KAMINSKI,** individually
and as administratrix of the
estate of James F. Fitzgerald**,**

                           **Plaintiff,**

                     **v.**

**UNITED STATES OF AMERICA**
**et al.,**

                         **Defendants.**

_____

**5:14-cv-1441**
**(GLS/ATB)**

## SUMMARY ORDER

Pending are the partial[1] motions for summary judgment of

defendants Dr. Joseph P. Markham and St. Joseph's Hospital Health

Center (hereinafter "St. Joseph's"), (Dkt. Nos. 72, 73-74), which seek

dismissal of the medical malpractice claim brought by plaintiff Lois

Kaminski based on allegations that her son, James Fitzgerald, was injured

and eventually died as a result of defendants' negligence, improper care,

---

[1] In their notices of motion, defendants purport to seek complete dismissal of the amended complaint. (Dkt. No. 72 at 1, Dkt. No. 73 at 1.) However, their motions only address Kaminski's medical malpractice claim and fail to address his claim for lack of informed consent, which is brought against "[a]ll [d]efendants." (Am. Compl. ¶¶ 46-50, Dkt. No. 13.) As such, the court expresses no opinion on the viability of this claim at this juncture but will entertain supplemental motions for summary judgment on this claim within thirty days of the date of this Summary Order.

and improper treatment, (Am. Compl. ¶¶ 28-33, Dkt. No. 13).[2]

The following facts are undisputed. On February 6, 2012, after complaints of chest pain and loss of consciousness, Fitzgerald was transported via ambulance to St. Joseph's Emergency Department. (St. Joseph's[3] Statement of Material Facts (SMF) ¶¶ 8-9, Dkt. No. 74, Attach. 15.) At St. Joseph's, Dr. Markham conducted a physical examination of Fitzgerald, monitored his vitals, and ordered various tests. (*Id.* ¶¶ 10, 13-15.) Ultimately, Dr. Markham diagnosed Fitzgerald with vasovagal syncope, dehydration, reactive airway disease, and wheezing. (*Id.* ¶ 17.) After Dr. Markham ordered medication and saline, Fitzgerald was discharged to his home. (*Id.* ¶¶ 18-20.) At the time, Dr. Markham noted that Fitzgerald's "condition is satisfactory." (Dkt. No. 74, Attach. 5 at 31.) Dr. Markham also referred Fitzgerald to the Westside Clinic for a follow-up appointment and re-evaluation within two to four days. (St. Joseph's SMF

---

[2] Kaminski also brought medical malpractice claims against the United States and two other medical providers. (Am. Compl. ¶¶ 34-45.) The two medical providers were previously dismissed from this lawsuit without objection. (Dkt. No. 60.) The United States did not move for summary judgment. As such, the claim against the United States remains and the facts related to it are not discussed herein.

[3] Given that St. Joseph's takes the position that the claims against it are based solely on its vicarious liability for the actions of Dr. Markham, (Dkt. No. 74, Attach. 16 at 9-10), the parties' motion papers are largely identical. Although both defendants submitted a statement of material facts, (Dkt. No. 72, Attach. 37; Dkt. No. 74, Attach. 15), for the sake of expediency, the court draws its background facts solely from the statement of material facts filed by St. Joseph's.

¶ 21.)  Fitzgerald did not follow-up at the Westside Clinic; instead, he went

to Pulaski Urgent Care the following month.  (*Id.* ¶ 22.)  On May 23, 2012,

Fitzgerald died of a heart attack.  (*Id.* ¶¶ 23-24.)

The standard of review pursuant to Rule 56 of the Federal Rules of

Civil Procedure is well established and will not be repeated here.  For a full

discussion of the standard, the court refers the parties to its decision in

*Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom.*

*Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

The parties agree that Kaminski's supplemental claim of medical

malpractice is governed by New York substantive law.  (Dkt. No. 72,

Attach. 36 at 6; Dkt. No. 74, Attach. 16 at 6; Dkt. No. 78, Attach. 5 at 6.)

> Under New York law, a medical malpractice plaintiff must
> establish (1) the standard of care where the treatment occurred,
> (2) that the defendant breached the standard of care, and (3) that
> this breach proximately caused the injury.  To prove the standard
> of care, a plaintiff must present expert medical evidence, unless
> the malpractice was so obvious that such evidence is
> unnecessary.

*Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 630 (2d Cir. 2009)

(internal citations omitted).

Defendants' motions are centered on alleged deficiencies with the

report of Kaminski's expert, Dr. Scott Jolin.[4] (Dkt. No 72, Attach. 36 at 7-12; Dkt. No. 74, Attach. 16 at 7-9.) Dr. Jolin opined that "the standard of care was not met" because "Dr. Markham failed to develop a differential diagnosis and consider other possible causes of the presentation of . . . Fitzgerald." (Dkt. No. 72, Attach. 15 at 14.) According to Dr. Jolin, given Fitzgerald's presentation, "acute coronary syndrome should have been primarily considered and further evaluated," but "[i]t was not considered, and as a direct result, . . . Fitzgerald died of an acute myocardial infarction[.]" (*Id.*) Dr. Jolin based his opinion on Fitzgerald's medical records, death certificate, autopsy report, and the deposition transcripts of Dr. Markham and Kaminski. (*Id.* at 13.) Defendants do not dispute that Dr. Jolin qualifies as an expert.

Defendants seize on an example provided within Dr. Jolin's report to argue that the standard of care was met.[5] (Dkt. No. 72, Attach. 36 at 7-

---

[4] The United States filed a memorandum in opposition to the pending motions. (Dkt. Nos. 75-76.) However, as argued by Dr. Markham, (Dkt. No. 81 at 9-10), the court does not consider these papers because the United States has not asserted claims against Dr. Markham or St. Joseph's and thus has no standing to oppose their motions for summary judgment. *See Aktas v. JMC Dev. Co.*, 877 F. Supp. 2d 1, 29-30 (N.D.N.Y. 2012).

[5] Defendants also rely on a competing expert opinion by Dr. Joel Bartfield, who found that Dr. Markham did not deviate from the standard of care. (Dkt. No. 74, Attach. 13.) Dr. Bartfield's opinion is not discussed in this Summary Order because it merely demonstrates a battle of the experts that would otherwise necessitate a trial. *See Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 505 (N.D.N.Y. 2017); *Smith v. City of N.Y.*, No. 12 Civ. 4922, 2015 WL 4643125, at *5 n.6 (S.D.N.Y. Aug. 5, 2015).

10; Dkt. No. 74, Attach. 16 at 7-8.)  Specifically, in addition to rendering the expert opinions described above, Dr. Jolin went on to hypothesize that "Dr. Markham could have met the standard of care in several ways," including "arrang[ing] an urgent outpatient cardiac evaluation by a cardiologist or an internist" and "inform[ing] [Fitzgerald] about the concern that the symptoms were a potential indication of a significant cardiac disease and accentuat[ing] the importance of [a] follow-up."  (Dkt. No. 72, Attach. 15 at 14.)  Defendants argue that Dr. Jolin met the standard of care by referring Fitzgerald to the Westside Clinic and including warnings about cardiac issues in his discharge papers.  (Dkt. No. 72, Attach. 36 at 7-10; Dkt. No. 74, Attach. 16 at 7-8.)  The court agrees with Kaminski that an issue of fact necessitates denial of defendants' motions.

First, Dr. Jolin's hypothetical does not alter his ultimate opinion that Dr. Markham deviated from the standard of care by not considering, further evaluating, or informing Fitzgerald about acute coronary syndrome.  (Dkt. No. 78, Attach. 5 at 9-10.)  Additionally, even assuming that the Westside Clinic could have initiated a cardiac evaluation, (Dkt. No. 72, Attach. 16 at 29), it is unclear whether Dr. Markham arranged for this to take place.

Although Dr. Markham testified at deposition that his discharge instructions included "a referral for syncope that would have included cardiac evaluation in my mind," (Dkt. No. 72, Attach. 7 at 62), his equivocal opinion merely creates an issue of material fact to be resolved at trial. Furthermore, notwithstanding whether Dr. Markam arranged an urgent outpatient cardiac evaluation, there is a question of fact over whether Dr. Markham "accentuated the importance of [a] follow-up." (Dkt. No. 72, Attach. 15 at 14.) Although Dr. Markham claims that he did not completely rule out a cardiac event based on Fitzgerald's symptoms, (Dkt. No. 72, Attach. 7 at 76), the discharge papers are void of any diagnosis of acute coronary syndrome or other cardiac event and, instead, state that "[p]atient's condition is satisfactory," (Dkt. No. 72, Attach. 18 at 1). Although the discharge papers include information about cardiac risk factors, this boilerplate language was included with other, general health information, including HIV testing, seat belt use, and smoking dangers, (*id.* at 4-7), which, at best, raises a question of fact regarding whether this language accentuated the importance of a follow-up.

Next, Dr. Markham argues that Dr. Jolin's conclusion regarding proximate cause should be discredited as speculative because "[he] did

6

not know that Dr. Markham was not the last medical provider who treated [Fitzgerald] before he passed away." (Dkt. No. 72, Attach. 36 at 11.)  First, this assertion is belied by the fact that Kaminski's deposition testimony, which Dr. Jolin reviewed, (Dkt. No. 72, Attach. 15 at 13), revealed that after seeing Dr. Markham, Fitzgerald went to the Pulaski Health Center and was referred to a gastroenterologist, (Dkt. No. 72, Attach. 6 at 37-40).  Next, although Dr. Jolin's opinion regarding "direct" causation is perhaps inartful, the expert nonetheless opined that decedent's death was a result of Dr. Markham's failure to develop a differential diagnosis of acute coronary syndrome after reviewing the medical records available to Dr. Markham, Fitzgerald's death certificate, and Fitzgerald's autopsy report.  (Dkt. No. 72, Attach. 15 at 13.)  The court agrees with Kaminski that any intervening act that occurred after Dr. Markham treated Fitzgerald is fodder for trial.  (Dkt. No. 78, Attach. 5 at 20.)

Accordingly, it is hereby

**ORDERED** that defendants' motions for summary judgment (Dkt. No. 72, 73-74) are **DENIED**; and it is further

**ORDERED** that defendants may move for summary judgment as to Kaminski's lack of informed consent claim within thirty (30) days, but if

defendants do not so move, a trial scheduling order will be issued in due

course; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to

the parties.

**IT IS SO ORDERED.**

November 16, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge